[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO REARGUE (DOCKET ENTRY NO. 133)
This matter was tried to the court, Skolnick, J., and a decision was rendered on June 23, 1998. Pursuant to that decision, the court found that: (1) CHFA breached its duty to inspect the premises, but the plaintiff failed to prove it was damaged by CHFA's breach; (2) even if CHFA was in breach of its contractual obligations under the Completion Assurance Agreement, the plaintiff failed to show that such a breach caused it to suffer damages; and (3) the plaintiff was not entitled to the disbursement of insurance proceeds.
On July 7, 1998, the plaintiff filed a motion to reargue, which was granted in part by the court, Skolnick, J., as to whether the plaintiff is entitled to approximately $95,000 (excluding interest) held in various escrow funds. The court heard brief oral argument from both parties on February 9, 1999, and makes the following findings.
Pursuant to the Completion Assurance Agreement, Brack Poitier, as the general contractor, was obligated to deposit with the defendant a Completion Assurance Fund in the amount of $169,790 to secure or indemnify the defendant (lender) or the plaintiff (owner) for expenses, loss or damage suffered or sustained as a result of any default by Poitier. (Exhibit 31, Tab 20 § 1). Because Poitier was unable to post the entire amount himself, the plaintiff posted $39,790 on behalf of Poitier, which represents the amount sought. The fund was to be maintained by the defendant and was to be disbursed (1) during the course of construction to Poitier as deemed necessary; (2) upon final closing; or (3) "In the event of default by [Poitier] under the Construction Contract: the entire fund or balance remaining therein to the Lender; to be used by the Lender to indemnify it and the Owner as the case may be, for any loss, damage or expense whatsoever which they may suffer by reason of [Poitier's] failure CT Page 4247 to properly perform said Construction Contract." (Exhibit 31, Tab 20 § 2)
None of these disbursement provisions are applicable here. Construction on the project terminated over five years ago, there was never a final closing, and the court never found that Poitier materially breached the construction contract, which would trigger the calling of the letter of credit. (Memorandum of Decision, June 23, 1998, p. 11). There is no clause in the completion assurance agreement indicating how remaining completion assurance funds should be dispersed in the event that none of the conditions subsequent are met. Therefore, the court finds that the plaintiff is not entitled to any of the remaining funds under the Completion Assurance Agreement.
The plaintiff also seeks $41,000 deposited by it pursuant to an Operating Deficit Guaranty Deposit Agreement. (Exhibit 31, Tab 22). The Operating Deficit Guaranty Deposit Agreement specifically provided that "1. . . . [f]unds shall be dispersed from the account at the sole discretion of the [defendant]. 2. Any funds remaining in the account at the maturity date of the Mortgage Loan, and upon payment in full of the Mortgage Loan, shall be paid over to the [plaintiff]." (Exhibit 31, Tab 22 §§2-3).
The defendant had the sole discretion to disperse these funds as it saw fit. Presumably, the defendant has decided not to return these funds to the plaintiff. The court notes that the defendant is only obligated to do so upon maturity and full payment of the mortgage loan, a condition which has not been fulfilled here. Therefore, the court finds that the plaintiff has failed to demonstrate that it is entitled to receive the $41,000 escrowed under the Operating Deficit Guaranty Deposit.
The plaintiff also seeks $5,000 it posted as insurance escrow. Pursuant to the Mortgage Deed, the plaintiff, at its sole expense, was obligated to secure various types of insurance on the subject property for the benefit of the defendant. (Exhibit 31, Tab 10 § 1.04.4(a)). The plaintiff was obligated to deposit "a sum equal to one-twelfth (1/12) of the next maturing insurance premiums and charges on or with respect to the Mortgaged Property less all sums previously paid therefor. Said sums are to be held by [defendant] in escrow but without payment of interest thereon to pay for said insurance premiums. Any excess funds accumulated hereunder remaining after payment of the CT Page 4248 items herein mentioned shall be credited to the subsequent monthly payments of the same nature required hereunder, and any remaining balance shall be credited to the principal secured thereby." (Exhibit 31, Tab 10 § 1.04.4(c).
The court notes that due to vandalism, an insurance claim was made and monies were paid to the defendant. The court found that the plaintiff was not entitled to any insurance proceeds due to its own failure to comply with contractual procedures, and because the defendant had the right to apply any net insurance proceeds as a credit to the plaintiff's debt. (Memorandum of Decision, June 23, 1998, pp. 13-14). The court notes that while the Mortgage Deed allows the defendant to apply net insurance proceeds as it sees fit, there is no provision allowing it to utilize the insurance escrow fund in a like manner. For reasons discussed below, however, the plaintiff is not entitled to recover any of these funds.
Finally, the plaintiff seeks to recoup approximately $10,000 held for attorney's fees as part of the closing. Attorney's fees are discussed in the Commitment Letter. (Exhibit 31, Tab 1). Pursuant to the Commitment Letter, the plaintiff was obligated to pay, deposit or deliver to the defendant "[any reasonable costs, fees and expenses, including, but not limited to, attorney's fees arising in the preparation for the Initial or Final Closing of the Mortgage Loan." (Exhibit 31, Tab 1 § 8(e)). Payment of attorney's fees are also discussed in the Promissory Note. (Exhibit 31, Tab 9).
As argued by the defendant at oral argument, any attorney's fees sought by the plaintiff's attorney in regard to the closings would be separate from fees generated by this litigation. For example, the court notes that the Mortgage Deed provides that the plaintiff is obligated to pay all fees and costs for court or administrative proceedings of any kind to which the defendant may be a party either as plaintiff or defendant by reason of the note, mortgage, or other instrument securing the note. (Exhibit 31, Tab 10 § 1.11(iii)). Presumably, no further legal action will be undertaken by these parties in regard to initial or final closings on the property, and the commitment letter does not indicate that the defendant may dispense with excess attorney's fees held in escrow in whatever manner it wishes. In addition, the defendant has not cited to the court any other provision in the parties' contractual agreements which entitle the defendant to any escrow funds held for attorney's fees in connection with CT Page 4249 the closings. Although there is a general provision in the mortgage deed that the plaintiff will reimburse the defendant for expenses, the defendant has not shown that any expenses have been incurred in relation to the closings which would justify the defendant's entitlement to any remaining attorney's fees money escrowed by the plaintiff.
Notwithstanding the plaintiff's entitlement to recoup some of the escrow monies pursuant to the specific contractual provisions cited above, there remains in issue whether any such escrow funds should be retained by the defendant as part of a set off. The plaintiff's position is that because this is a non-recourse loan, the defense of set off is not applicable, as the defendant's only remedy is to take title to the subject building.
Set off is permitted pursuant to the Promissory Note, which provides in pertinent part: "[Plaintiff] hereby gives the [defendant] a lien and right of setoff for all of [Plaintiff's] liabilities hereunder and against all deposits, credits, and property of the [Plaintiffs], endorsers or guarantors other than the premises mortgaged to secure this Note and any other collateral of a maker, endorser or guarantor now or hereafter in possession or control of holder or in transit to it." (Exhibit 31, Tab 9).
CHFA attorney Lawrence Pilcher testified that the non-recourse nature of the underlying loan meant that the plaintiff would not be personally liable for repayment, but that CHFA "will look generally to the property itself for repayment of the note in case there's some kind of a default or look to any deposits or any security which has been obtained pursuant to the loan documents." (Trial, September 24, 1997, p. 9). Pilcher then described the "deposits and securities," which include the escrow accounts at issue here. (Trial, September 24, 1997, pp. 9-10). Pilcher further testified that the plaintiff was in default under the mortgage note as of August of 1992 because it failed to pay Poitier for work that had been requisitioned. (Trial, September 24, 1997, pp. 72-73)
Because the plaintiff breached its contractual obligations and remains in debt to the defendant, the defendant is entitled to exercise its right of set off. Accordingly, the court finds that where the plaintiff would otherwise be entitled to recover some of the escrowed monies at issue, it is precluded from doing so due to its own breach of its contractual obligations. The CT Page 4250 defendant is entitled to use any escrowed funds as compensation in light of the plaintiff's failure to perform its contractual obligations.
Snolnick, J.